Kathleen RUSH, Eleanor Fraser and
San Mateo County Daycare
Association, Plaintiffs-Appellees,

v.

Mario OBLEDO, Secretary of California
Health and Welfare Agency, et al.,
Defendants-Appellants.

No. 83–2623.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided March 28, 1985.

Louis E. Wolcher, Pettit & Martin, Marcia Rosen, Kathleen Murray, San Francisco, Cal., for plaintiffs-appellees.

Stephanie Wald, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellants.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,[*] District Judge.

FERGUSON, Circuit Judge:

In this case the issue is whether California state statutes and regulations permitting warrantless inspections of family day care homes violate the Fourth Amendment to the United States Constitution, enforceable against the states through the Fourteenth Amendment. Concluding that the vital governmental interest in the protection of children furthered by warrantless inspections is paramount, and that the regulation of family day care homes is sufficiently pervasive so "that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection,'" *Donovan v. Dewey*, 452 U.S. 594, 603, 101 S.Ct. 2534, 2540, 69 L.Ed.2d 262 (1981) (quoting *United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972)), we hold that properly limited warrantless inspections of family day care homes fall within the "pervasively regulated business" exception to the warrant requirement and thus do not violate the Fourth Amendment. *United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972). *See Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

## I. FACTS

In 1981, plaintiffs, an operator of a licensed family day care home and an association of licensed family day care providers, brought suit seeking a declaratory judgment that a California state statute [1] and its implementing regulation [2] which permit warrantless inspections of family day care homes were unconstitutional. They also sought an injunction against further warrantless inspections under these provisions. The district court, concluding that such warrantless searches of family day care homes were not justified either under the "pervasively regulated business" exception to the warrant requirement or on a general "reasonableness" basis, held that the challenged statute and regulation violated the Fourth Amendment and enjoined further warrantless inspections of family day care homes. *Rush v. Obledo*, 517 F.Supp. 905 (N.D.Cal.1981).

The state appealed to this court and also requested a stay of the injunction pending appeal. The request for a stay was denied. While the appeal was still pending, the California Legislature enacted new statutes governing licensing and operation of family day care homes, Cal.Health & Safe-

---

[*] Hon. William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

1. Section 1533 of the California Health and Safety Code provided:

Any duly authorized officer, employer, or agent of the state department may, upon presentation of proper identification, enter and inspect any place providing personal care, supervision, and services at any time, with or without advance notice, to secure compliance with, or to prevent a violation of, any provision of this chapter.

Cal. Health & Safety Code § 1533 (repealed 1981).

2. Section 86026 of title 22 of the California Administrative Code provided:

Any duly authorized officer, employee, or agent of the department or licensing agency may, upon presentation of proper identification, enter and inspect any family day care home and all required records, during hours of operation, with or without advance notice, for the purpose of securing compliance with, or preventing violation of the applicable laws and regulations. Refusal to admit such officer, employee or agent shall constitute cause for revocation or suspension of the family day care license.

22 Cal.Admin.Code § 86025 (repealed 1981).

ty Code §§ 1597.50–1597.65, and the California Department of Social Services (the "Department") issued new implementing regulations. 22 Cal.Admin.Code §§ 88001–88038.

Under the new scheme, the statute which plaintiffs had originally challenged was made inapplicable to family day care homes.[3] Under a newly-enacted section, Cal.Health & Safety Code § 1597.55, unannounced inspections were limited but were made mandatory for the renewal of a license and were required annually for ten percent of all licensed family day care homes.[4] The new statutory scheme applied only to homes providing care to more than one family other than the caregiver's, Cal. Health & Safety Code § 1597.51(b), removed all criminal sanctions for violation of statutes and regulations, and limited warrantless searches to areas of the home in which family day care services are provided or to which the children have access. 22 Cal.Admin.Code § 88030(a)(2). Finding these factors relevant to the district court's decision, this court remanded the case to the district court for consideration of the constitutionality of the amended statutory and regulatory scheme.

On remand, the district court permitted additional discovery and conducted a hearing on the parties' cross-motions for summary judgment. The court reaffirmed its previous decision by holding that the new regulatory scheme continued to violate the Fourth Amendment by permitting warrantless searches which unreasonably intruded upon the privacy of the home; but because of the removal of criminal penalties from the statutes, the court altered its prior decision by lowering the standard for the issuance of warrants, which it had previously imposed, to one requiring probable cause as defined for administrative searches in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320–21, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305 (1978). The Legislature, however, subsequently reinstated criminal penalties. Cal.Health & Safety Code § 1597.63. When the district court became aware of the legislative action, it filed an amended decision which provided that in cases where family day care providers are subject to criminal sanctions, warrantless searches and standards for issuance of warrants must meet criminal search requirements.

The state again appealed to this court. While the appeal was pending, the California Legislature again enacted new statutes governing child day care facilities, including family day care homes. The statutes presently in effect retain section 1597.55 in

---

**3.** The revisions removed family day care homes from the provisions of Chapter 3 of the Health and Safety Code, of which section 1533 was a part. *See* § 1597.53 (1981) ("No family day care home for children shall be licensed under Chapter 3 (commencing with Section 1500) but shall be subject to licensure exclusively in accordance with the provisions of this chapter which shall be administered with other licensing activities of the department."). Section 1597.53 was revised again in August, 1984 and now provides:

No family day care home for children shall be licensed under Chapter 3 (commencing with Section 1500), but shall be subject to licensure exclusively in accordance with this chapter and Chapter 3.4 (commencing with Section 1596.70) which shall apply to family day care homes.

Cal.Health & Safety Code. § 1597.53 (enacted Sept. 29, 1984).

**4.** Section 1597.55 provides:

No site visitations, or unannounced visits or spot checks shall be made under this chapter except as provided in this section.

(a) A site visitation shall be required prior to the initial licensing of the applicant.
(b) An unannounced site visitation shall be required for the renewal of a license.
(c) A public agency under contract with the department, as provided in Section 1597.52, may make spot checks if it does not result in any cost to the state. However, spot checks shall not be required by the department.
(d) The department shall make a site visitation on the basis of a complaint and a followup visit as provided in Section 1597.-56.
(e) In addition to any site visitation or spot check authorized under this section, the department shall annually make unannounced visits on 10 percent of all family day care homes for children licensed under this chapter. The unannounced visits may be made at any time, including the time of a request for a renewal of a license.

Cal.Health & Safety Code § 1597.55.

force, eliminate the exemption for homes providing care to children with less than one family other than the caregiver's, and continue the provisions for criminal penalties. The most significant change in the new statute was the enactment of section 1596.852, which broadly authorizes unannounced inspections.[5] Indeed, this case has come full circle, for the text of section 1596.852 is identical to the language initially challenged by the plaintiffs.[6]

The existing regulations promulgated by the Department, which limit section 1597.55, remain in effect until new ones are adopted or until July 1, 1985, whichever comes first. Cal.Health & Safety Code § 1596.81(b). Neither these regulations nor any others, to our knowledge, limit exercise of inspection authority under section 1596.852.

## II. THE CALIFORNIA REGULATORY SCHEME

Recognizing that "affordable, quality licensed child care is critical to the well-being of parents and children" and that "good quality child day care services are an essential service for working parents," the California Legislature enacted statutes governing the licensing of child day care facilities and the health and safety conditions therein. Cal.Health & Safety Code §§ 1596.72(e), 1596.73(e). *See id.* §§ 1596.70–1597.65. Child day care facilities include day care centers and family day care homes. *Id.* § 1596.750. This case involves only family day care homes.

Family day care homes are very different from institutional day care centers. A family day care home is a private residence in which care, protection, and supervision are regularly provided for periods of less than twenty-four hours per day for twelve or fewer children while their parents or guardians are away. Cal.Health & Safety Code § 1596.78. The person who owns and operates the family day care home is called the "provider." *Id.* § 1596.791. Generally, the provider is a mother caring for her own children in her home who also undertakes to care for others' children for compensation. The California Legislature has expressly manifested its intent to preserve a traditional home environment in family day care homes and requires that such homes be situated in normal residential surroundings. Cal.Health & Safety Code § 1597.40(a).

Family day care homes must be licensed by the State and are subject to health and safety requirements with respect to their interiors and yards. *See* Cal.Health & Safety Code §§ 1596.80, 1597.52, 1597.53, 1597.54; 22 Cal.Admin.Code § 88028. The Department is authorized by statute to establish, administer and monitor a licensing program for family day care homes in accordance with the statutory licensing requirements for such facilities, Cal.Health & Safety Code § 1596.871 (previously § 1597.51), and to adopt such rules and regulations as may be necessary to carry out the provisions of the statutes governing child day care facilities. *Id.* § 1596.81(a).

Two separate provisions of California law authorize unannounced inspections. Section 1597.55 of the California Health and Safety Code requires the Department to make warrantless inspections of family day care homes in four different situations: (1) prior to the initial licensing of a provider, (2) for the renewal of a license, (3) on the basis of a complaint and a follow-up visit to assure any violation has been corrected, and (4) for the mandatory annual inspection of ten percent of all licensed family day care homes. Cal.Health & Safety Code § 1597.55(a), (b), (d), (e). Under this statute, unannounced visits may be made at any time. *Id.* § 1597.55(e). An-

---

**5.** Section 1596.852 provides:

Any duly authorized officer, employee, or agent of the department may, upon presentation of proper identification, enter and inspect any place providing personal care, supervision, and services at any time, with or without advance notice, to secure compliance with, or to prevent a violation of, any provision of this chapter.

Cal.Health & Safety Code § 1596.852 (enacted Sept. 29, 1984).

**6.** Compare n. 5 *supra* with n. 1 *supra.*

other statute, section 1596.852, authorizes any officer, employee, or agent of the Department to enter and inspect any place providing personal care, supervision, and services at any time, with or without notice, to secure compliance with, or to prevent a violation of, any applicable statute. *Id.* § 1596.852. *See also id.* § 1596.71.

## III. ANALYSIS UNDER THE FOURTH AMENDMENT

We now consider the plaintiffs' contention that warrantless inspections of family day care homes as authorized by these California statutes violate the Fourth Amendment as applied to the states through the Fourteenth Amendment.[7] We review decisions granting summary judgment de novo. *National Union Fire Insurance Co. v. Argonaut Insurance Co.,* 701 F.2d 95, 96 (9th Cir.1983).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.... and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has defined the scope of the Fourth Amendment to include a person's "reasonable expectation of privacy." *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The Supreme Court "frequently ha[s] noted that privacy interests are especially strong in a private residence," *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 648, 78 L.Ed.2d 477 (1984) (footnote omitted), and has explained that "a search of private houses is presumptively unreasonable if conducted without a warrant." *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967) (citing *Camara*

*v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)).

Family day care homes are private residences which operate as businesses in certain areas during periods of less than twenty-four hours a day. The provider undeniably has a strong privacy interest in her home. *See Michigan v. Clifford,* 104 S.Ct. at 648. Nonetheless, the provider is aware that, when she is receiving compensation for caring for children other than her own in her house, regulations govern the operation and condition of her home which are different from those covering other private residences. *See* Cal. Health & Safety Code § 1596.855 ("Upon initial licensure, child day care facilities shall be provided a printed copy of all applicable regulations by the department without charge and at any other time when revisions in the regulations are reprinted for distribution."). A reasonable means of inspection is necessary to effectuate compliance with these regulations. Conversely, the mere fact that a business is carried on in the home for certain hours does not remove the home from Fourth Amendment protection. The decisions of the Supreme Court firmly establish "that the Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property." *Donovan v. Dewey,* 452 U.S. 594, 598, 101 S.Ct. 2534, 2537, 69 L.Ed.2d 262 (1981). *See also Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311–13, 98 S.Ct. 1816, 1819–21, 56 L.Ed.2d 305 (1978); *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). In fact, the Supreme Court has expressly stated that, in the light of the history of the Fourth Amendment, "it is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence." *Marshall v. Barlow's, Inc.,* 436 U.S. at 312, 98 S.Ct. at 1820.

---

7. While our consideration of this contention could be deferred by yet another remand for the district court to consider the most recently enacted statutes, we heed the dictates of efficiency and the combined urging of the parties in presently reaching this question of law. The district court has repeatedly expressed its view that a warrant requirement applies, and the principal change in the statutes is the re-enactment of the section which the district court originally enjoined.

The Supreme Court has recently reaffirmed its position that administrative searches generally require warrants. *Michigan v. Clifford,* 104 S.Ct. at 646 ("Except in certain carefully defined classes of cases, the nonconsensual entry and search of property is governed by the warrant requirement of the Fourth and Fourteenth Amendments.") (footnote omitted).[8] "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Marshall v. Barlow's, Inc.,* 436 U.S. at 312–13, 98 S.Ct. at 1820–21. Therefore, it is clear that a warrant is required to conduct the inspections sought in this case, unless some recognized exception to the warrant requirement applies. *Id.*

### A. The "Pervasively Regulated Business" Exception

The state contends that its policy of warrantless entry into family day care homes is justified under the "pervasively regulated business" exception to the warrant requirement. This exception arose in *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), where the Supreme Court approved warrantless inspection of commercial enterprises engaged in businesses closely regulated and licensed by the government. In *Colonnade,* the Court, in holding that Congress had "broad authority to fashion standards of reasonableness for searches and seizures" in the liquor industry, stressed the long history of federal regulation of the alcoholic beverage industry. 397 U.S. at 77, 90 S.Ct. at 777. The long history of federal regulation found in *Colonnade* was not present in *Biswell,* but in upholding

warrantless searches in the firearms industry in *Biswell,* the Court found dispositive the pervasive nature of the governing regulations and the urgent and paramount federal interest furthered by the warrantless inspections at issue. *Biswell,* 406 U.S. at 315–17, 92 S.Ct. at 1596–97. The Court concluded that an individual choosing to accept a license and engage in a pervasively regulated business did so with the knowledge that he would be subject to effective inspection. *Id.* at 316, 92 S.Ct. at 1596. *See also Marshall v. Barlow's, Inc.,* 436 U.S. at 313, 98 S.Ct. at 1595 ("The businessman in a regulated industry in effect consents to the restrictions placed upon him.") (quoting from *Almeida-Sanchez v. United States,* 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973)).

The central difference between the *Colonnade-Biswell* line of cases and those in which warrantless administrative searches have been found unreasonable so as to violate the Fourth Amendment has been the type of regulation involved. Persons successfully protesting warrantless searches were not engaged in any regulated or licensed businesses, but were subjected to such searches pursuant to general regulatory schemes which indiscriminately covered many different businesses or covered conditions in private residences or automobiles. *See, e.g., Michigan v. Clifford,* 104 S.Ct. 641 (1984) (municipal arson investigators' warrantless entry of a private residence to investigate the cause of a recent fire); *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (municipal arson investigators' warrantless entry of a commercial building absent exigent circumstances to investigate the cause of a fire); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (warrantless inspection of business premises pursuant to the Occupational Safety and Health Act of 1970 (OSHA), 29

---

**8.** In a footnote clarifying the "certain carefully defined classes of cases" which are not subject to the warrant requirement, the Court cites *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972),

and *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), as examples of cases involving the "heavily regulated business" exception to the warrant requirement. *Michigan v. Clifford,* 104 S.Ct. 641, 646 n. 2 (1984).

U.S.C. § 657(a)); *Almeida-Sanchez v. United States*, 413 U.S. 266, 270–71, 93 S.Ct. 2535, 2538–39, 37 L.Ed.2d 596 (1973) (Border Patrol's warrantless search of automobile 25 miles north of the Mexican border); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (warrantless inspection of private commercial premises to obtain compliance with Seattle's Fire Code pursuant to a municipal ordinance); *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (warrantless inspection of private apartment buildings for housing code violations pursuant to a municipal ordinance). None of these cases involved inspections similar to those found in *Colonnade* and *Biswell* which applied to only one, discrete, pervasively regulated industry. *Marshall v. Barlow's, Inc.*, 436 U.S. at 313, 98 S.Ct. at 1820. In *Marshall v. Barlow's, Inc.*, the Supreme Court answered the government's argument that requiring a warrant for OSHA inspectors meant that warrantless search provisions in certain other regulatory statutes were also constitutionally invalid by stating that:

> The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute. Some of the statutes cited apply only to a single industry, where regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply.

436 U.S. at 321, 98 S.Ct. at 1825. Therefore, these cases demonstrate that a statute authorizing warrantless searches which applies only to a single pervasively regulated industry, where urgent governmental interests are furthered by such regulatory inspections, does not violate the Fourth Amendment. *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262 (1981).

In *Donovan v. Dewey*, the Supreme Court reaffirmed the *Colonnade-Biswell* exception to the warrant requirement by upholding warrantless searches of a pervasively regulated industry that did not have a long history of regulation. 452 U.S. at 605–06, 101 S.Ct. at 2541–42. *Donovan* involved the warrantless inspection of the working portions of a stone quarry pursuant to the Federal Mines Safety Act, 30 U.S.C. § 813(a). In analyzing whether such inspections offended the Fourth Amendment, the Court first stated that it was undisputed that a substantial governmental interest in improving the health and safety conditions in mines existed and that Congress could have reasonably determined that warrantless inspections were necessary to properly enforce the Act. 452 U.S. at 602–03, 101 S.Ct. at 2539–40. The Court then determined that the Act's inspection program, in terms of the certainty and regularity of its application, provided a constitutionally adequate substitute for a warrant. *Id.* at 603–06, 101 S.Ct. at 2540–42. The Court based this determination on five points: (1) the regulation of mines was sufficiently pervasive so that the owner of a facility could not help but be aware that he would " 'be subject to effective inspection,' " *id.* at 603, 101 S.Ct. at 2540 (quoting *United States v. Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596); (2) the regulations required the inspection of all mines and specifically defined the frequency of inspection; (3) the standards with which mine operators had to comply were all specifically set forth in the Federal Mines Safety Act or in Title 30 of the Code of Federal Regulations; (4) the Federal Mines Safety Act required that all mine operators be informed of all applicable standards; and (5) the Act prohibited forcible entries and required that the government, when refused entry, file a civil action in federal court to obtain an injunction against future refusals. *Id.*, 452 U.S., at 603–05, 101 S.Ct. at 2540–2542. Finally, the Court rejected the contention that the *Colonnade-Biswell* exception applied only to those heavily regulated industries which have a long history of government regulation, finding that such a requirement would lead to absurd results which the Fourth Amendment's central concept of reasonableness would not tolerate. *Id.* at 605–06, 101 S.Ct. at 2541–42. Instead, the Court held that "it is the

pervasiveness and regularity of the federal regulation that ultimately determines whether a warrant is necessary to render an inspection program reasonable under the Fourth Amendment." *Id.* at 606, 101 S.Ct. at 2542.

■ Applying this analysis to the case before us, we conclude that warrantless inspections of family day care homes do not offend the Fourth Amendment. The majority of children receiving care in family day care homes are under five years of age and some are as young as six days old. The California Legislature was plainly aware that such children, away from their parents, need the special protection of the state and that the interests, health, and safety of children are of paramount importance in our society. Parents who use day care, especially low-income parents who must place their children in affordable day care while they work, must be assured that strict monitoring of health and safety conditions will keep their children safe.

Recognizing the magnitude of abuses in child day care facilities susceptible to easy concealment, such as over-capacity, lack of supervision, accessibility to poisonous chemicals or firearms, open pools, hazardous stairwells, and sexual or physical abuse, the Legislature could reasonably determine that a system of warrantless inspection is necessary in this case. The Legislature demonstrated its conclusion that a warrant requirement would significantly frustrate effective enforcement of the statutes and regulations governing family day care by requiring all inspections to be unannounced. *See* Cal. Health & Safety Code § 1597.55(b), (d), (e). If a warrant were required, a delay in inspecting a home, during which a violation can be corrected, is unavoidable. Recognizing the states' vital interest in protecting children in family day care homes, we therefore follow the *Donovan v. Dewey* decision to "defer to this legislative determination" of the necessity of unannounced inspection, 452 U.S. at 603, 101 S.Ct. at 2540, since a warrant requirement could impede the

" 'specific enforcement needs' " of the statutes and regulations governing family day care. *Id.* (quoting *Marshall v. Barlow's Inc.*, 436 U.S. at 321, 98 S.Ct. at 1825). *See also Trustees for Alaska v. E.P.A.*, 749 F.2d 549, 559–561 (9th Cir.1984).

Even though a warrant requirement clearly might impede the " 'specific enforcement needs' " of the statutes and regulations governing family day care, *Donovan v. Dewey*, 452 U.S. at 603, 101 S.Ct. at 2540 (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. at 321, 98 S.Ct. at 1825), we still must consider whether the regulation of family day care homes is "sufficiently pervasive and defined [so] that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection.' " *Id.* (quoting *United States v. Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596). In short, we must determine "whether the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant." 452 U.S. at 603, 101 S.Ct. at 2540.

Family day care homes are heavily regulated. The Legislature's belief that it has a responsibility to "insure the health and safety of children in family homes that provide day care" is expressed in the pervasive regulation and monitoring of family day care homes. Cal.Health & Safety Code § 1597.30(a), (g). The statutes governing child day care require the Department to develop rules and regulations which effectively oversee the health and safety standards governing the operation of the family day care homes. *Id.* § 1596.81(a). The regulations promulgated by the Department completely regulate the environment in which family day care is provided, including the heating and ventilation, the safety hazards such as pools, stairs, firearms, and stored chemicals, poisons, and detergents; the cleanliness of the home; and the amount of supervision provided for the children.[9] 22 Cal.Admin.Code §§ 88024, 88026, 88028, 88036. Any new

---

**9.** These regulations are set forth in the Appendix hereto.

licensee must be given a copy of applicable regulations and later provided with copies of any revisions to the regulations. Cal. Health & Safety Code § 1596.855.

In *Donovan v. Dewey* similar factors led the Court to uphold warrantless searches of stone quarries under the *Colonnade-Biswell* exception. 452 U.S. at 603–06, 101 S.Ct. at 2540–42. The detailed environmental standards here clearly indicate that the regulation of family day care homes is sufficiently pervasive so that the provider cannot help but be aware that he or she " 'will be subject to effective inspection.' " *Id.* at 603, 101 S.Ct. at 2540 (quoting *United States v. Biswell*, 406 U.S. at 316, 92 S.Ct. at 1596).

### B. Standards for the Exercise of Inspection Authority

Even though we have determined that the warrantless inspection of family day care homes does not necessarily violate the Fourth Amendment, we find that the current statutes authorizing such searches are overbroad—permitting general searches of any home providing care and supervision at any time of the day or night—and thus invalid unless sufficiently limited by the current regulations so as to preclude general searches. *See* Cal.Health & Safety Code §§ 1596.71, 1596.852, 1597.55. Section 1596.852, which pursuant to Section 1596.71 applies to family day care homes as well as other child day care facilities, authorizes Department inspectors to enter and inspect *"any place* providing personal care, supervision, and services at *any time,* with or without advance notice, to *secure compliance with,* or to *prevent a violation of, any* applicable statute." Cal.Health & Safety Code § 1596.852 (emphasis added). Section 1597.55 authorizes unannounced visits to family day care homes at any time. *Id.* § 1597.55(e).

The general language of these statutes does not properly reflect the peculiar nature of family day care homes. A family day care home is a business only when children cared for from other families for compensation are present and at all other times is a private residence. Furthermore, even when the children cared for are present, the provider retains expectations of privacy in those areas to which the day care children are denied access. The state's warrantless inspection authority should not extend beyond the "closely regulated business" in which the provider engages. Warrantless inspections are permissible in those portions of the provider's home where day care activities take place only when the home is being operated as a family day care business. Such inspections, however, cannot be justified in purely private contexts. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353–54, 97 S.Ct. 619, 629–30, 50 L.Ed.2d 530 (1977). *See also See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967).

Where the Legislature has " 'authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply.' " *Donovan v. Dewey*, 452 U.S. at 599, 101 S.Ct. at 2538 (quoting *Colonnade Catering Corp. v. United States*, 397 U.S. at 77, 90 S.Ct. at 777). In this case, the current statutes, absent limiting regulations, do not provide any standards to guide inspectors or restrict the " 'unbridled discretion [of] executive and administrative officers,' " *id.* (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305 (1978)), and are far broader than necessary to guarantee the effectiveness of the provisions governing family day care. Such statutes do not provide a constitutionally adequate substitute for a warrant. *Id.*, 452 U.S., at 603, 101 S.Ct. at 2540. The searches must be directly connected with the environment the Legislature seeks to regulate—i.e., the areas of the home used by children when the children are present.

The state argues that the Department regulations governing family day care home inspections sufficiently limit these statutes so as to preclude general searches of homes providing care to children. The regulation governing inspections, however,

explicitly applies only to Section 1597.55 of the Health and Safety Code.[10] 22 Cal.Admin.Code § 88030. Section 1597.55 governs the site visitations, unannounced visits and spot checks of family day care homes, permitting such inspections in five circumstances. At oral argument, the state specifically stated that Section 1597.55 did not preclude searches of family day care homes under Section 1596.852. The Department can therefore inspect family day care homes under both section 1596.852, which governs all child day care facilities, and section 1597.55, which is limited to family day care homes.

■ Because the regulations limit the scope of the search and the hours during which the search can be made only with respect to section 1597.55, section 1596.852 is unlimited by the current regulations, permitting general searches at any time of any place providing care and supervision to children. Section 1596.852 is therefore invalid under the Fourth Amendment, and the injunction must be affirmed concerning that section.

■ Section 1597.55, which is also overbroad in its authorization of unannounced inspections at any time, is currently limited by the regulation governing inspections. 22 Cal.Admin.Code § 88030. In determining the sufficiency of this regulation, we note that the regulation restricts the areas to be searched to those where the children have access and limits the hours at which searches may be conducted to those during which family day care takes place. This statute, as limited by this regulation, is thus sufficiently precise and restrictive so as to preclude general searches by state officials. The injunction is therefore reversed as far as it affects warrantless searches under this provision. *See Mar-*

*shall v. Barlow's, Inc.,* 436 U.S. at 325, 98 S.Ct. at 1827.

### C. Caveat

In holding that a sufficiently limited program of warrantless inspections of family day care homes would not violate the Fourth Amendment we are not suggesting that such a program would be valid for any business subject to licensing requirements. *See Marshall v. Barlow's, Inc.,* 436 U.S. at 321–22, 98 S.Ct. at 1824–25. We cannot stress forcibly enough that there is no basis for applying the "pervasively regulated business" exception to the warrant requirement merely because a business conducted in a home or elsewhere requires a license. For this exception to apply, the environment in which the licensed business is conducted must be pervasively regulated and an urgent governmental interest must be furthered by warrantless inspections. *See United States v. Biswell,* 406 U.S. at 315–17, 92 S.Ct. at 1596–97. Family day care homes are subject to pervasive regulations, expressly applying only to them, governing their interiors and yards. These regulations are necessary to protect the health and safety of the small children taken into these homes during the day while their parents are at work. This is not the case with other licensed professions, such as the legal profession, which are not subject to any such specific health and safety standards but only to those generally covering all commercial or residential properties. *See See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In this case we uphold only the firmly established but narrow exception to the warrant requirement known as the "pervasively regulated business" exception. As

---

**10.** Section 88030 of title 22 of the California Administrative Code reads as follows:

88030 Inspection Authority
(a) In accordance with the provisions of Health and Safety Code Section 1597.55:
(1) The licensee shall permit the licensing agency to inspect the facility for compliance with or to prevent violations of family day

care statute or regulation during the facility's normal business hours or at any time family day care services are being provided at the facility.
(2) The licensee shall permit the licensing agency to inspect any part of the facility in which family day care services are provided or to which the children have access.

stated in *Donovan v. Dewey*, the cases of *Colonnade* and *Biswell*

make clear that a warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.

*Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981).

## IV. CONCLUSION

Because the state has a vital governmental interest in the protection of children which is furthered by warrantless inspections, and because family day care homes are pervasively regulated and all providers are required by statute to be alerted to this pervasive regulation, we hold that properly limited warrantless inspections of family day care homes do not offend the Fourth Amendment. Nonetheless, unless limited by appropriate regulations so as to preclude general searches, we find the current statutes overbroad, allowing inspections which are unnecessary for the furtherance of state interests, and thus invalid under the Fourth Amendment as general searches. Section 1596.852 is not narrowed by regulations and is thus invalid. The regulations which limit section 1597.55, however, render constitutional the warrantless inspections under the authority of that statute by narrowing the inspections to those which further the state's interest in regulating the day care business.

The judgment of the district court is thus affirmed on different grounds concerning section 1596.852, and reversed concerning section 1597.55 as far as it authorizes searches as narrowed by the existing regulations, which preclude general searches by state officials under section 1597.55. If the Department promulgates regulations that sufficiently limit section 1596.852 so as to preclude general searches in accordance with this opinion, it may return to the district court to seek to have the injunction lifted. The injunction issued by the district court concerning section 1596.852 remains in full force and effect pending further proceedings.

AFFIRMED IN PART AND REVERSED IN PART.

## APPENDIX

The following regulations from Title 22 of the California Administrative Code govern the environment of family day care homes:

88024   Staffing Ratio and Capacity

(a) The maximum number of children, including the licensee's own children under age 12, for whom care shall be provided when there is no assistant provider in the home shall be either:

(1) Four infants.

(2) Six children, no more than three of whom may be infants.

(b) The maximum number of children, including the licensee's and assistant provider's own children under age 12, for whom care shall be provided when there is an assistant provider in the home shall be twelve children, no more than four of whom may be infants.

(c) A Family Day Care Home shall have a maximum capacity of 12 provided that staffing ratios are maintained.

(d) The capacity specified on the license shall be the maximum number of children to whom care can be provided.

88026   Fire Safety Clearance

A fire safety clearance by the State Fire Marshal shall be required for any Family Day Care Home which is licensed for seven or more, and when one or more nonambulatory children, as defined in Health and Safety Code Sections 13131 and 13131.3, are in care.

88028   Operation of a Family Day Care Home

(a) The licensee or registrant shall be present in the home and shall insure that the children are supervised at all times while children are in care, except when circumstances require his/her

temporary absence. The licensee or registrant shall arrange for a substitute adult to care for and supervise the children during his/her absence. Temporary absences shall not exceed 20 percent of the hours that the facility is providing care per day.

(b) The home shall be kept clean and orderly, with heating and ventilation for safety and comfort.

(c) The home shall maintain telephone service.

(d) The home shall provide safe toys, play equipment and materials.

(e) When a child shows signs of illness he/she shall be separated from other children, and the nature of the illness determined. If it is a communicable disease he/she shall be separated from other children until the infectious stage is over.

(f) If food is brought from the children's homes, the container shall be labeled with the child's name and properly stored or refrigerated.

(g) The home shall be free from defects or conditions which might endanger a child. Safety precautions shall include but not be limited to:

(1) Fireplaces and open-face heaters shall be screened to prevent access by children. The home shall contain a fire extinguisher or smoke detector device, or both, which meets standards established by the State Fire Marshal.

(2) Gas heaters shall be properly vented and permanently installed.

(3) Where children less than five years old are in care, stairs shall be fenced or barricaded.

(4) Poisons, detergents, cleaning compounds, medicines and other hazardous substances shall be stored where they are inaccessible to children.

(5) All in-ground swimming pools shall have at least a five foot fence or covering inspected and approved by the licensing agency. Fencing shall be so constructed that it does not obscure the pool from view, cannot be easily climbed by children and is self-latching at the top of the gate. If a pool cover is used, it shall be strong enough to completely support the weight of an adult.

(A) Bodies of water including but not limited to above ground pools which cannot be emptied after each use, fish ponds, sunken wading pools, spas, and hot tubs shall be made inaccessible when not in use, by fencing or covering. If a cover is used, it shall be strong enough to completely support the weight of an adult.

(6) Outdoor play areas shall be either fenced, or outdoor play shall be supervised by the licensee or caregiver.

(7) Firearms, and other dangerous weapons shall be kept in locked cabinets during the hours care is provided.

(8) An emergency information card shall be maintained for each child and shall include the child's full name, telephone number and location of a parent or other responsible adult to be contacted in an emergency, the name and telephone number of the child's physician and the parent's authorization for the licensee or registrant to consent to emergency medical care.

(9) Each Family Day Care Home shall have a written disaster plan of action prepared on a form approved by the licensing agency. All children, age and ability permitting, provider and assistant provider, and other members of the household shall be instructed in their duties under the disaster plan. As new children are enrolled, age and ability permitting, they shall be informed promptly of their duties as required in the plan.

88036 Personal Rights

(a) Each child receiving services from a Family Day Care Home shall have certain rights which shall not be waived or abridged by the licensee or registrant, regardless of parental consent

725

or authorization. These rights include, but are not limited to the following:

(1) To be treated with dignity in his/her personal relationship with staff and other persons.

(2) To receive safe, healthful, and comfortable accommodations, furnishings, and equipment.

(3) To have parents or guardians informed by the licensee of the provisions of the law regarding complaints and the procedures for registering complaints confidentially, including, but not limited to the address and telephone number of the licensing agency's complaint unit.

(4) To not be subjected to physical or unusual punishment, humiliation, mental abuse, or punitive interference with daily functions of living, such as eating, sleeping or toileting.

(b) Parents, legal guardians or authorized representatives of children in care shall be given a consumer education and awareness handout by the licensee or registrant. Such handout shall be provided by the Department and distributed to licensees and registrants by the licensing agency.

Farris, Circuit Judge, concurred in part and dissented in part with opinion.