891 F.2d 99
 58 USLW 2448, 4 IER Cases 1825, 14
O.S.H. Cas. (BNA) 1386,
1990 O.S.H.D. (CCH) P 28,785
 NATIONAL TREASURY EMPLOYEES UNION, American Federation of
Government Employees (AFL-CIO), National Federation of
Federal Employees, Maureen Shaffer, and Mariam C. Jones,
Plaintiffs-Appellants, Cross-Appellees,
v.
George BUSH, President of the United States and Constance
Horner, Director, Office of Personnel Management,
Defendants-Appellees, Cross-Appellants.
 No. 88-3770.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 29, 1989.
 
 Elaine Kaplan, Deputy Director of Lit. and Gregory O'Duden, Director of Lit., Nat. Treasury Employees Union, Washington, D.C., for Nat. Treasury Employees Union.
 H. Stephen Gordon and Alice L. Bodley, Washington, D.C., for NFFE.
 Robert Y. Zener, and Leonard R. Schaitman, Washington, D.C., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before GARZA, WILLIAMS and DAVIS, Circuit Judges.
 GARZA, Circuit Judge:
 
 
 1
 Federal employee union challenged the Constitutionality of Executive Order 12,564, which mandated random urinalysis drug testing of Federal workers in sensitive positions, and also called for testing of other employees on reasonable suspicion. Because we find that the Order is not invalid on its face, and that a Constitutional challenge would be better launched against the individual agency plans implementing the Order, we AFFIRM the district court's dismissal of this cause.
 
 Background
 
 2
 On September 15, 1986, President Ronald Reagan signed Executive Order No. 12,564, 51 Fed.Reg. 32,889 (1986) (the "Order"), entitled "Drug-Free Federal Workplace." The Order authorizes random urinalysis drug testing of employees in "sensitive positions," and testing of any employee on "reasonable suspicion" of drug use.
 
 
 3
 The National Treasury Employees Union (the "NTEU") then brought this action, challenging the Constitutionality of the Order, and alleging that the disciplinary provisions violated the Civil Service Reform Act, 5 U.S.C. §§ 7513(a), 2302(b)(10) (the "CSRA"). The district court dismissed the NTEU's Constitutional challenge without prejudice, stating that since agency application of the Order was not yet determined, the challenge was not ripe. Also, the district court held that, even though the Order called for termination of employees for drug use which lacked some "nexus" to job performance, because the dismissal could be appealed, the disciplinary provisions of the Order did not offend the CSRA.[1]
 
 
 4
 After the entry of the judgment, various Federal agencies issued specific plans for implementing the Order. Then, the NTEU petitioned for post-judgment relief as the challenge was now ripe. The district court issued a second order denying relief and dismissing the claims with prejudice on the grounds that a Constitutional challenge should be to the agency plans individually, not to the Order itself generally. This appeal followed.
 
 Discussion
 1. Constitutional Argument
 
 5
 Though various Federal courts have addressed the Constitutionality of urinalysis drug testing plans, this case stands apart because it represents a challenge to the underlying Executive Order, and not to the plans themselves. The Order before us today is the foundation of Health and Human Services guidelines and numerous agency plans based on them.[2] Because this case challenges the facial validity of the Order, whose implementation may vary tremendously with the individual agency plans, our analysis cannot rely on existing drug testing jurisprudence. We are not faced with a balancing of privacy and governmental interests as in previous drug testing cases.[3] Rather, we must determine whether Executive Order 12,564 is invalid on its face.
 
 
 6
 A facial challenge to an Executive Order, like a facial challenge to legislation, "is, of course, the most difficult challenge to mount successfully, since the challenge must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987); U.S. v. Parker, 848 F.2d 61, 62 (5th Cir.1988). See, Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362, 369 n. 5 (1982). Here, the NTEU would have to establish that every possible plan implemented under the Order would be invalid. And that is a very heavy burden.
 
 
 7
 The D.C. Circuit has addressed the Constitutionality of agency plans promulgated under the Order, and has held that portions of several do pass muster.[4] So, because not every application of the Order would be invalid, the Order is facially valid. Any challenges to its implementation must be launched against the individual agency plans promulgated under it.
 
 
 8
 The NTEU argues that, while some small proportion of agency plans put out under the Order may be valid, that is not sufficient to support the entire Order. "The tiny tail of legitimate testing, if it exists at all, cannot wag the great unconstitutional dog." NTEU Brief at p. 21. Because agency plans have been held valid, no matter how few, the Order is facially valid. And as the NTEU and similarly-situated parties can challenge the agency plans individually, there will be no great unconstitutional dog. That is, plans not meeting Constitutional standards may well be struck down as they are challenged individually.
 
 
 9
 The NTEU also argues that they need not prove that every plan applying the Order would be invalid, as "search" statutes may be struck down as overbroad. In support, they cite Rush v. Obledo, 756 F.2d 713 (9th Cir.1985). We decline to follow Rush, as that case dealt with a statute lacking implementing regulations. That is, the Rush court struck down a "search" statute as overbroad specifically because it lacked implementing regulations while upholding a very similar statute that did have regulations. In our case, the agency plans serve as implementing regulations.
 
 2. Disciplinary Provision
 
 10
 The disciplinary provision of the Order mandates termination of employees who test positive for drugs, absent some proof of "nexus" between drug use and job performance.[5] The NTEU argues that the provision violates the CSRA, which prohibits discipline of an employee on the basis of "conduct which does not adversely affect the performance of the employee...." 5 U.S.C. § 2302(b)(10). But Section 5(g) of the Order itself answers any questions there might be of conflict with the CSRA, as it expressly provides that "[a]ny action to discipline an employee who is using illegal drugs ... shall be taken in compliance with otherwise applicable procedures, including the Civil Service Reform Act " (emphasis added). Under this section, agency plans must necessarily comply with the "nexus" requirement of the CSRA, so the Order itself cannot violate rights granted by the CSRA.
 
 Conclusion
 
 11
 The Order clearly meets the standard of facial Constitutional validity, as plans issued under it have been held to pass Constitutional muster. Any challenges to drug testing would be better brought against the individual plans implementing the Order. The validity of the individual plans would then be determined under our presently-evolving jurisprudence. Finally, the Order's disciplinary provision does not violate the CSRA as any agency plan must necessarily comply with CSRA mandates.
 
 
 12
 For these reasons and those stated above, the judgment of the district court is in all things AFFIRMED.
 
 
 
 [1]
 The NTEU challenged the Office of Personnel Management's (the "OPM") letter containing instructions on implementing the Order, on the grounds that the OPM did not comply with notice provisions of the Administrative Procedures Act. The district court found that the letter was invalid, but refused to enjoin its implementation. Both the NTEU and the government appealed that decision. Because the OPM has since published the letter and otherwise complied with the notice requirements, those issues on appeal are now moot. We will not address them
 
 
 [2]
 See "Mandatory Guidelines for Federal Workplace Drug Testing Programs," 53 Fed.Reg. 11,970 (April 11, 1988)
 
 
 [3]
 The Supreme Court recently decided two urinalysis cases, National Treasury Employees Union v. Von Raab, --- U.S. ----, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) and Skinner v. Railway Executives' Association, --- U.S. ----, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). In them, the Court held that urinalysis drug testing constitutes a "search" within the meaning of the fourth amendment, and therefore must be "reasonable" to pass Constitutional muster. Von Raab, 109 S.Ct. at 1390; Skinner, 109 S.Ct. at 1412-1413. Because the searches are warrantless, they are reasonable only if the individual's privacy interests are outweighed by the government's interests in testing. The tests must be "minimally intrusive" and the government's interest "compelling." Id
 
 
 [4]
 See, e.g., American Federation of Government Employees v. Skinner, 885 F.2d 884 (D.C.Cir.1989) (upholding testing of Transportation employees with safety-sensitive jobs); National Federation of Federal Employees v. Cheney, 884 F.2d 603 (D.C.Cir.1989) (upholding testing of civilian Army personnel involved in aviation); Harmon v. Thornburgh, 878 F.2d 484 (D.C.Cir.1989) (allowing testing of Justice department personnel with top-secret security clearance)
 
 
 [5]
 Section 5(b) of the Order provides, in pertinent part: "Agencies shall initiate action to discipline any employee who is found to use illegal drugs ..." (emphasis added)