Paul NEWMAN, George R. Hill and Pan Arts Production Corp., Plaintiffs-Appellants,

v.

UNIVERSAL PICTURES and M.C.A., Inc., Defendants-Appellees.

No. 85-6347.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1986.

Decided April 6, 1987.

Maxwell M. Blecher, Los Angeles, Cal., for plaintiffs-appellants.

Stephen A. Kroft, Beverly Hills, Cal., for defendants-appellees.

Before SCHROEDER and FLETCHER, Circuit Judges, and GEORGE,* District Judge.

SCHROEDER, Circuit Judge:

This is an appeal from a district court judgment dismissing appellants' antitrust claim. Appellants are Paul Newman, a well-known film actor, George Roy Hill, a prominent film director, and Pan Arts Production corporation, Hill's closely owned corporation (hereinafter "Newman and Hill"). Between 1972 and 1976, they contracted with appellee Universal Pictures to provide their services in two feature films, "Slapshot" and "The Sting," in exchange for a percentage of the revenues. They filed this action for damages arising out of Universal's distribution of revenues from the sale and rentals of video cassette versions of those films. Appellants allege in their complaint that after the emergence of video cassette technology in the early 1980s, Universal Pictures and other major motion picture studios conspired to fix the percentage of the revenue paid to artists, including Newman and Hill, for their services, in violation of sections 1 and 2 of the Sherman Act. Appellants allege that they therefore received smaller percentages of the cassette revenue for "The Sting" and "Slapshot" than they would otherwise have received. They do not allege damages in connection with any film agreements en-

* Honorable Lloyd D. George, United States District Judge, District of Nevada, sitting by designation.

tered into after the alleged conspiracy arose. The district court dismissed for failure to state an antitrust claim. We affirm.

## FACTS

In 1972, Newman entered into a written agreement with Universal in which Universal employed Newman to act in the motion picture "The Sting." In the same year, Hill entered into a written contract with Universal in which Universal employed Hill to direct "The Sting." Both of the 1972 contracts provided that Universal would pay Newman and Hill a contractually defined percentage of the proceeds derived from "The Sting." In 1974, after "The Sting" had been released, Hill entered into a written contract in which Universal employed Hill and Pan Arts to direct three motion pictures, including "Slapshot." The contract provided that the compensation paid by Universal to Hill and Pan Arts would include a percentage of the net profits from "Slapshot." In 1976, Newman contracted with Universal to act in "Slapshot" in exchange for, inter alia, a percentage of gross proceeds and net profits from the film. Because Newman and Hill were to receive a percentage of film revenues, they are known as "profit participants."

By the early 1980s, after release of "The Sting" and "Slapshot," video disc and video cassette players had become a new medium for viewing feature films. Many studios, including appellee Universal Pictures, began to distribute films on video cassettes for home viewing. Universal has received substantial proceeds from sales and rental of video disc and video cassette versions of "The Sting" and "Slapshot."

In April 1985, Newman and Hill brought this suit against Universal Pictures under Section 4 of the Clayton Act, 15 U.S.C. § 15, seeking damages from Universal Pictures for its alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2. Appellants allege that in 1981, Universal conspired with other motion picture studios, including Columbia Pictures, Paramount Pictures, MGM/UA, Twentieth Century-Fox Film Corporation, and Warner Brothers, to apply the profit participation clauses in each of the studios' contracts in a manner that minimized the amount paid to the appellants and other artists.

Newman and Hill allege that rather than paying them the appropriate percentage of all revenues received from "The Sting" and "Slapshot," Universal Pictures and the other studios conspired to minimize this amount by classifying revenue received as "distribution" revenue, rather than production revenue. Under the terms of the contracts, the artists were not entitled to a percentage of distribution revenue, and therefore the alleged conspiracy minimized the amount the studios actually paid to the appellants and other artists.

According to appellants, the alleged agreement to restrict the amount of money that the artists can receive from video cassette revenues constitutes a price-fixing conspiracy which prevents artists, whom appellants characterize as sellers of their services, from obtaining more favorable compensation from the studios, the buyers of the artists' services. In addition to the antitrust claim, the complaint includes pendent state law claims for breach of contract, breach of fiduciary duty, and for an accounting. All claims allege similar damages.

The district court granted Universal Pictures' motion to dismiss the antitrust claim under Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim. The court dismissed the remaining state law claims, without prejudice, for lack of federal jurisdiction. Appellants then brought this appeal, in which the sole issue is whether the complaint states a claim for which relief can be granted under the antitrust laws.

## DISCUSSION

We review *de novo* an order dismissing a complaint for failure to state a claim. *Alonzo v. ACF Property Management, Inc.,* 643 F.2d 578, 579 (9th Cir.1981). A court may dismiss a complaint for failure to state a claim for relief under Fed.R. Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In an antitrust action, the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 760 (9th Cir.1980).

Universal argues that the complaint cannot be read to allege an antitrust violation, because the appellants entered into these contracts before any conspiracy was alleged to have occurred. Therefore the conspiracy could have had no effect on competition for their services under the contracts for the production of "Slapshot" and "The Sting."

■ To the extent the complaint alleges only a conspiracy to refuse to pay sums due under pre-conspiracy contracts, Universal Pictures is certainly correct, and appellants so acknowledge. Section 1 of the Sherman Act prohibits conspiracies "in restraint of trade or commerce." Thus, while it is not always necessary to allege that a conspiracy unreasonably restrains trade, it is necessary to show that there is some restraint of trade. *See, e.g., Addyston Pipe & Steel Co. v. United States*, 175 U.S. 211, 245, 20 S.Ct. 96, 109, 44 L.Ed. 136 (1899); ABA Antitrust Section, Antitrust Law Developments (2d ed. 1984) at 2. In *UNR Industries, Inc. v. Continental Insurance Co.*, 607 F.Supp. 855, 859–61 (N.D. Ill.1984), the court held that allegations of a conspiracy to breach contracts were insufficient to state a claim under antitrust laws, because the plaintiff failed to show that the conspiracy served to restrain trade. Thus the court noted that "the Sherman Act does not outlaw every action that hurts consumer welfare, it outlaws '[e]very contract, combination ... or conspiracy [ ] in *restraint of trade.*'" *Id.* at 859 (emphasis in original).

Appellants urge that the complaint is not limited to a contract claim, but that it alleges a sufficient antitrust claim as well. The complaint alleges that appellants' contracts were made before the video cassette technology was available to consumers, and that Universal and other studios conspired to adopt an interpretation of the contracts that minimized the compensation to be paid to profit participants. The complaint states that the defendants' conduct "has the effect ... of artificially reducing the compensation paid to entities or persons entitled to a share of the proceeds or profits from exhibition of feature films on home video cassettes."

■ Under the generous standard we apply to antitrust complaints, we must decide whether there is any set of facts consistent with the allegations of the complaint which would establish an antitrust injury to these plaintiffs with respect to the marketing of these films. None has been urged on us. Appellants' fundamental problem is that Newman and Hill entered into the contracts for "The Sting" and "Slapshot" between 1972 and 1976, before the alleged conspiracy arose in 1981. The subsequent conspiracy could not have affected the competition for Newman and Hill's services at the time the contracts were made. Furthermore, the alleged conspiracy could not have affected appellants' ability to negotiate with other studios for distribution of the video cassettes, because the existing contract covered distribution of the film in all forms. It is axiomatic that "[t]o constitute a Section 1 violation, the contract, combination, or conspiracy must be in restraint of trade." E. Kintner, 2 Federal Antitrust Law § 9.19 (1980). Thus, if the alleged conspiracy did not restrain competition for Newman and Hill's services in "The Sting" and "Slapshot," there can be no resulting antitrust violation.

■ Newman and Hill argue that they need not show antitrust injury because in analyzing a price-fixing conspiracy, an anticompetitive effect is presumed. Newman and Hill's complaint alleges a horizontal price-fixing agreement among buyers of services, which is illegal *per se. See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223–24, 60 S.Ct. 811, 844–45, 84 L.Ed. 1129 (1940). However, although the *per se* rule relieves plaintiff of the burden

of demonstrating an anticompetitive effect, which is assumed, it does not excuse a plaintiff from showing that his injury was caused by the anticompetitive acts.

■ This is because plaintiffs must allege an antitrust injury, which is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." [1] *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). *See also John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495, 500 (9th Cir.1977); *Snyco, Inc. v. Penn Central Corp.,* 551 F.Supp. 949, 951–52 (E.D.Penn.1982). Allegations of price-fixing alone, unconnected to any of plaintiffs' activities for which damages are sought, do not set forth a claim under the antitrust laws. *See Fields Productions, Inc. v. United Artists Corp.,* 318 F.Supp. 87 (S.D.N.Y.1969), *aff'd,* 432 F.2d 1010 (2d Cir.1970), *cert. denied,* 401 U.S. 949, 91 S.Ct. 932, 27 L.Ed.2d 232 (1971).

The price fixing conspiracy alleged in this case would clearly have affected competition for film contracts entered into during the existence of the conspiracy, but "Slapshot" and "The Sting" are not such films. Hill and Newman may have other claims in connection with contracts made after 1980, but they are not asserted here.

Affirmed.

Judge George may file a separate statement at a later date.

---

**1.** Similar concepts sometimes have been expressed in terms of antitrust standing. *Bhan v. NME Hospitals, Inc.,* 772 F.2d 1467, 1469 n. 2 (9th Cir.1985). Courts have also asked whether the plaintiff fell within the "target area" of the violation, or inquired into the "directness" or "indirectness" of the injury, or conducted an analysis of proximate cause. For commentary on the confusion engendered by these disparate approaches, *see Associated General Contractors of California, Inc. v. State Council of Carpenters,* 459 U.S. 519, 535–38 & 536 nn. 31–33, 103 S.Ct. 897, 907 nn. 31–33, 74 L.Ed.2d 723; *Haff v. Jewelmont Corp.,* 594 F.Supp. 1468, 1471–79 (N.D.Cal.1984).