**Ronnie C. HAWKINS, Plaintiff,**

v.

**Le Roy BACA; et al., Defendants.**

**No. CV 00–01078 DDP CWX.**

United States District Court, C.D. California.

Sept. 22, 2000.

Stephen Yagman, Marion R. Yagman, Joseph Reichmann, Kathryn S. Bloomfield, Yagman & Yagman & Reichmann, Venice Beach, CA, for Plaintiff.

Steven Blades, Manning & Marder, Los Angeles, CA, for Defendants.

## ORDER DENYING DEFENDANT YAROSLAVSKY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

PREGERSON, District Judge.

This matter comes before the Court on a motion to dismiss the plaintiff's first amended complaint filed by defendants Yaroslavsky, Antonovich, Burke, Knabe, and Molina.[1] These five defendants are members of the Los Angeles County Board of Supervisors. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court adopts the following order.

### BACKGROUND

This motion arises out of a complaint filed by Ronnie C. Hawkins against Los Angeles County Sheriff Le Roy Baca, five deputy sheriffs, fifty unknown sheriff's department employees ("Unknown Named Defendants"), and the five members of the Los Angeles County Board of Supervisors (the "Supervisors"). This particular motion to dismiss is brought by the Supervisors only.

---

1. The motion to dismiss was filed by defendant Yaroslavsky on July 25, 2000. At that time, defendants Antonovich, Burke, Knabe, and Molina had not yet been served with the complaint. They were eventually served, and on August 25 they filed a notice of joinder in defendant Yaroslavsky's motion to dismiss.

According to the complaint, the relevant facts are as follows. At the time of the incident giving rise to this complaint, Hawkins was a pretrial detainee in the custody of the defendants at the Los Angeles County Men's Central Jail. (First Amended Compl. ¶ 10.) In addition to representing himself in a criminal action, he was also a plaintiff in a civil action filed against defendants Baca and the County of Los Angeles (the "civil rights suit"). (*Id.*) Hawkins had various personal effects in his cell, including materials that he needed to defend himself in the criminal action and to assist in the prosecution of his civil rights suit. (*Id.*)

On June 25, 1999, Hawkins was injured. (*Id.*) He was taken to a hospital, and was forced to leave his personal effects behind at the Central Jail. (*Id.*) While Hawkins was in the hospital, the Unknown Named Defendants stole and/or destroyed his personal effects, including the materials that he was using to defend himself in his criminal trial. (*Id.*) Hawkins alleges that the Unknown Named Defendants stole and/or destroyed his property in order to retaliate against him for filing the civil rights suit. (*Id.*) According to Hawkins, because his legal defense materials had been stolen and/or destroyed, he was prevented from effectively defending himself in the criminal trial and, as a result, he was convicted and sentenced to life in prison. (*Id.*)

Although it is not entirely clear, it appears that the only allegation in the complaint that is aimed at the Supervisors is the following:

> the County supervisors are liable to plaintiff for the underlying wrongs alleged in this action, based on their policy and custom of routinely rubber-stamping indemnification payments of punitive damages assessed against deputy sheriffs, because that policy and custom operates to cause constitutional violations

by deputy sheriffs, such as the alleged violations in this action.

(*Id.* ¶ 9.)

Based on the above allegations, Hawkins has asserted eight causes of action against the defendants: (1) unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution; (2) a Fourteenth Amendment substantive due process claim; (3) some type of First Amendment claim (presumably a denial of the right of access to the courts); (4) a retaliation claim under the Fourteenth Amendment; (5) deprivation of property without the equal protection of the laws in violation of the Fourteenth Amendment; (6) conspiracy to retaliate against Hawkins by taking and destroying his property; (7) conspiracy based on racially-motivated bias; and (8) conspiracy to intimidate and harm Hawkins because he is a witness in a federal action.

The Supervisors now move to dismiss the entire complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. They argue that they are entitled to either absolute immunity or qualified immunity from suit.

## DISCUSSION

### 1. Legal Standard for Granting Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Newman v. Universal Pictures*, 813 F.2d 1519, 1521–22 (9th Cir.1987). The court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *See North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983).

## 2. Analysis

### A. Absolute Immunity

 The Supervisors argue that they are entitled to absolute immunity from suit in this case. As has long been recognized in this Circuit, local legislators are absolutely immune from suits based on their legislative activities. *See, e.g., Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir.1984). More recently, this principal has also been recognized by the United States Supreme Court. *See Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). " 'Absolute immunity protects the legislative process by shielding lawmakers from civil liability based on their legislative role which necessarily involves the balancing of social needs and rights of different groups.' " *Trevino v. Gates,* 23 F.3d 1480, 1482 (9th Cir.1994) (*"Trevino I"*), quoting *Gutierrez v. Municipal Court,* 838 F.2d 1031, 1046 (9th Cir.1988). No one seriously disputes the fact that the Supervisors are local legislators. The issue in this case is whether the Supervisors are engaging in legislative activity when they decide whether to indemnify deputy sheriffs for punitive damage awards.

In *Trevino I,* the Ninth Circuit addressed this precise issue. *Trevino I,* 23 F.3d 1480. Like Hawkins in this case, the plaintiff in *Trevino I* argued that city council members violated her civil rights by encouraging police officers to engage in unconstitutional behavior by routinely voting to pay punitive damage awards assessed against them. The city council members moved to dismiss the plaintiff's claims, arguing that they were entitled to absolute immunity because deciding whether to pay punitive damage awards was a legislative act. The Ninth Circuit disagreed.

 Courts in the Ninth Circuit "determine whether an act is legislative by considering two questions: (1) whether the act involves ad hoc decisionmaking, or the formulation of policy; and (2) whether the act applies to a few individuals, or to the public at large." *San Pedro Hotel Co.,*

*Inc. v. City of Los Angeles,* 159 F.3d 470, 476 (9th Cir.1998) (internal quotes and cites omitted). In order to be considered legislative, the act in question must involve the formulation of policy and/or apply to the public at large. Applying this test in *Trevino I,* the Ninth Circuit held that determinations made by city council members about whether to pay punitive damage awards were not legislative acts because they did not involve the formulation of policy and they did not apply to the public at large. Instead, they were particularized decisions made on a case-by-case basis that were "directed toward shielding individuals from specific damage awards." *Trevino I,* 23 F.3d at 1482. The Ninth Circuit thus upheld the district court's denial of the city council members' motion to dismiss.

It is difficult to imagine a case that is more on point than *Trevino I,* and thus difficult to see how the Supervisors can argue that they are entitled to absolute immunity. The Supervisors argue, however, that the holding in *Trevino I* has not survived a more recent Supreme Court holding in *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). The Court does not believe that *Bogan* overrules the ultimate holding in *Trevino I.*

The Court in *Bogan* addressed two issues. The first was whether local legislators enjoyed the same absolute immunity from suit for their legislative activities that state and regional legislators enjoyed. The Court easily concluded that they did. *Bogan,* 523 U.S. at 49, 118 S.Ct. 966.

The second issue in *Bogan* was whether the particular local legislators who had been sued were entitled to absolute immunity. The legislators in question had passed a city budget ordinance that called for the elimination of a particular city department. The plaintiff, who was the sole employee of the department, argued that the city council passed the ordinance, and eliminated her department, in order to retaliate against her for exercising her First

Amendment rights. The Court held that the act was "undoubtedly legislative," and that the city council members were thus entitled to absolute immunity from suit. *Id.* at 56, 118 S.Ct. 966. The appellate court had held that the city council's action was not legislative because it was specifically targeted at the plaintiff. The Court held, however, that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54, 118 S.Ct. 966. The Court noted that the act of voting for an ordinance was quintessentially legislative, and that "[t]he ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." Id. at 55–56, 118 S.Ct. 966.

The Supervisors argue that "the holding in *Trevino* does not withstand the expanded view of absolute immunity after *Bogan v. Scott–Harris.*" (*See* Mtn. to Dis. at 7.) Although it is clear that the *Bogan* decision expanded absolute immunity to local legislators, the Court is not convinced that it meaningfully expanded the concept of absolute immunity in general. As has always been the case, absolute immunity depends on whether the legislator in question is acting in a legislative capacity. *Bogan* merely clarified that, in determining whether particular acts are legislative, the actors' subjective intent and motives should not be considered. This Court does not believe that *Bogan* overruled *Trevino I.* In *Trevino I,* the Ninth Circuit held that the act of deciding whether to indemnify police officers for punitive damage awards is not a legislative act because it does not involve the formulation of policy and is not directed to the public as a whole. Unlike the act in *Bogan,* which involved the quintessentially legislative act of voting on a city budget, the act in *Trevino I* involved voting on whether to indemnify a specific individual in a specific case. The Court thus finds that the ultimate holding in *Trevino I* is still the law in this circuit, and that, based on this clear Ninth Circuit

authority, the Supervisors are not entitled to absolute immunity.

## B. Qualified Immunity

 The Supervisors also argue that they are entitled to qualified immunity. Public officials sued under § 1983 are entitled to qualified immunity if: (1) the constitutional right they allegedly violated was not clearly established at the time of the violation; or (2) a reasonable official would have thought that the defendant's actions were constitutional. *Palmer v. Sanderson,* 9 F.3d 1433, 1435 (9th Cir.1993).

In support of their argument that they are entitled to qualified immunity, the Supervisors cite *Trevino v. Gates,* 99 F.3d 911 (9th Cir.1996) ("*Trevino II* "). Two years after the city council members in *Trevino I* lost on their absolute immunity argument, they moved for summary judgment on the grounds that they were entitled to qualified immunity. This time, the Ninth Circuit agreed.

The Ninth Circuit began by assuming that the city council did indeed have a policy or custom of indemnifying officers for punitive damage awards. The question was whether that policy violated clearly established law. "To be clearly established, the law must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. It is not necessary that the alleged act have been previously declared unconstitutional, as long as the unlawfulness was apparent in light of preexisting law." *Trevino II,* 99 F.3d at 917. After surveying "the legal landscape", the Ninth Circuit ultimately concluded that "the law is not clearly established that a policy of indemnifying. punitive damage awards violates constitutional rights .... A city council does not violate section 1983 if it indemnifies officers against punitive damage awards on a discretionary, case by case basis, and complies in good faith with the requirements of Cal. Gov.Code § 825(b)." *Id.* at 918. The defendants argue that *Trevino II* conclusively established that a

policy of indemnifying punitive damage awards can never give rise to liability under § 1983. The Ninth Circuit, however, has recently rejected this argument.

 In *Cunningham v. Gates*, 229 F.3d 1271 (9th Cir.2000), the Ninth Circuit revisited the issue of whether indemnifying punitive damage awards can give rise to liability under § 1983. The plaintiffs in *Cunningham* sued several Los Angeles city council members under the same theory that Hawkins is asserting in this case. The *Cunningham* plaintiffs argued that, since *Trevino II*, the law has been clearly established that a policy of indemnifying punitive damage awards violates constitutional rights. The city council members moved for summary judgment based on qualified immunity, and the district court denied the motion. Although the Ninth Circuit reversed the denial of summary judgment, the decision makes it clear that a city council member who makes indemnification decisions in bad faith can be held liable under § 1983.

Two of the three plaintiffs in *Cunningham* claimed to have been victims of excessive force prior to the decision in *Trevino II*. As to these two plaintiffs, the Ninth Circuit held, "[a]s a matter of chronological necessity," that "the council members are clearly entitled to qualified immunity for lawsuits based on pre-*Trevino* decisions to indemnify officers against punitive damage awards." *Cunningham*, 229 F.3d at 1292. The remaining plaintiff claimed to have been the victim of excessive force four months after *Trevino II*. As to this plaintiff, the Ninth Circuit held that "[i]n order to defeat the council members' motion for summary judgment ... [the plaintiff] must present some evidence that the council members did not implement section 825's indemnification procedure in good faith in the four month window between the *Trevino* decision and the [plaintiff's] incident." *Id.* Although the Ninth Circuit ultimately concluded that the plaintiff had failed to present such evidence, the decision makes it clear that, had there been evidence of bad faith, the city council members' motion for summary judgment should have been denied. The Court thus finds that, under clear Ninth Circuit authority, a policy of indemnifying punitive damage awards that is implemented in bad faith can give rise to liability under § 1983.

In the first amended complaint, Hawkins alleges that the city council members have a policy of "routinely rubber-stamping indemnification payments of punitive damages assessed against deputy sheriffs." The Court finds that the plaintiff has sufficiently pled bad faith.

### CONCLUSION

For all the reasons discussed above, the Court denies the defendants' motion to dismiss.

IT IS SO ORDERED.