**GOLDEN DAY SCHOOLS, INC., a California non-profit corporation; et al., Plaintiffs,**

**v.**

**Carolyn PIRILLO, an individual; et al., Defendants.**

**No. CV00–04691DDPCTX.**

United States District Court, C.D. California.

Oct. 27, 2000.

James P. Clark, Gregory L. Doll, Joel D. Scott, Gibson Dunn & Crutcher, Los Angeles, CA, for plaintiffs.

Richard J. Rojo, CAAG Office of Atty. Gen. of California, Los Angeles, CA, Vladimir M. Shalkevich, Los Angeles, CA, for defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**

PREGERSON, District Judge.

This matter comes before the Court on the defendants' motion to dismiss and the

---

1. The plaintiffs allege that the CDE's finding of unacceptability resulted only from the form and presentation of Golden Day's audits, and was not based on the manner in which Golden Day used CDE money. (*Id.*) ·

2. On March 25, 1999, CDE, through the administrative panel, informed Parker that

plaintiffs' request for judicial notice. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court adopts the following Order.

**I. Background**

Plaintiff Golden Day Schools, Inc. ("Golden Day") is a non-profit corporation which operates child development and educational programs, including a child day care center, in South Central Los Angeles. (Pl.'s First Am. Compl., ¶ 3.) Plaintiff Clark Parker ("Parker") founded Golden Day in 1963, and now serves as its Chief Executive Officer. (*Id.* at ¶¶ 4, 16.) Plaintiff Rosa Little ("Little") is a Golden Day employee. (*Id.* at ¶ 5.)

Defendant Carolyn Pirillo ("Pirillo") is a Staff Counsel for the California Department of Education ("CDE"). (*Id.* at ¶ 6.) Defendants Keesha Woods ("Woods"), Jennifer Hua ("Hua"), Sergio Ramirez ("Ramirez"), and Susan Neeson ("Neeson") are employees of the California Department of Social Services ("DSS"). (*Id.* at ¶¶ 7–10.)

Golden Day applied for and began receiving subsidies from the State of California through the CDE in 1966, and continued to receive CDE subsidies until 1998. (*Id.* at ¶¶ 20, 22.) On April 22, 1998, CDE notified Golden Day that it intended not to renew Golden Day's funding in 1999 because Golden Day's 1992–93, 1993–94, and 1994–95 audits were unacceptable.[1] (*Id.* at ¶ 22.)

Pursuant to California law, Parker appealed CDE's decision not to renew Golden Day's funding through an administrative hearing held on March 4, 1999.[2] (*Id.* at ¶ 23, 24.) However, the plaintiffs allege that Golden Day was precluded from call-

Golden Day's audits, which had been revised, still were unacceptable, and therefore CDE would cease subsidizing Golden Day in June 1999, at the close of the 1998–99 fiscal year. (*Id.* at ¶ 25; Pl.'s Req. for Jud. Not., Ex. A, p. 6.)

ing witnesses or cross-examining adverse witnesses at the March 4, 1999 administrative hearing. (*Id.* at ¶ 24.) Parker also alleges that at least three administrative review panel members, including defendant Pirillo, were not impartial, and therefore Golden Day did not receive a fair hearing.[3] (*Id.* at ¶ 24.)

The plaintiffs allege that, soon after the panel's decision to stop funding Golden Day, the CDE demanded to enter Golden Day's premises and to examine Golden Day's files.[4] (Pl.'s Opp., p. 3.) The plaintiffs speculate that the CDE assumed that Golden Day would be unable to continue operations without CDE funding, and therefore the CDE needed access to Golden Day's files to relocate Golden Day's students. (*Id.*) However, the plaintiffs claim that the relocation of Golden Day's students was unnecessary because Golden Day had adequate reserve funding to continue its programs during the 1999–2000 academic year. (*Id.*)

On June 10, 1999, defendant Pirillo brought an ex parte application for an order shortening time for a contempt hearing based on Golden Day's refusal to provide the CDE with its students' names and addresses; the court denied the ex parte application the same day. (*Id.*)

The plaintiffs allege that, the day after the ex parte application was denied, Pirillo "[took] the law into her own hands" by filing a complaint with DSS. (First Am. Compl., ¶ 32.) As a result, the DSS employee defendants went to two Golden Day office sites with Los Angeles Police Department ("LAPD") officers to search for and seize Golden Day's files. (*Id.* at ¶¶ 32, 33.) The defendants did not have a warrant to search Golden Day's offices or to seize Golden Day's property.

Before the search began, Parker allegedly informed the DSS employees that they could not lawfully remove Golden Day's files without a court order. (*Id.* at ¶ 34.) The plaintiffs claim that the LAPD officers told plaintiff Little that they would arrest her unless she allowed the removal of Golden Day's files; the plaintiffs further allege that a DSS representative struck Little in the head while removing Golden Day's files. (*Id.* at ¶ 35.) According to the plaintiffs, "[t]he DSS representatives indiscriminately seized hundreds of Golden Day's files[,] . . . threw Golden Day's files into boxes without keeping any record of which files they were taking, and when they took the files—which were not secured—outside, many papers were dropped onto Crenshaw Boulevard and lost to the wind. To date, Golden Day does not know for certain which files were taken and which files were lost." (*Id.* at ¶ 36.)

The plaintiffs allege that DSS representatives copied Golden Day's files and returned some, but not all, of the files approximately six hours after the seizure occurred. (*Id.* at ¶¶ 44, 46.)

The plaintiffs filed this action to challenge the legality of the searches and seizures conducted by the defendants on June 11, 1999. They assert claims under 42 U.S.C. § 1983 for the deprivation of civil rights guaranteed by the Fourth Amendment's prohibition against unreasonable searches and seizures, and for the assault and battery allegedly suffered by Little. The defendants now seek dismissal of all the plaintiffs' claims based on the plaintiffs' failure to state claims upon which relief may be granted and this Court's lack of subject matter jurisdiction.

---

**3.** In about July 1999, Parker filed a petition for judicial relief in California State Court, but the petition was denied, and judgment was entered for CDE. (Pl.'s Req. Jud. Not., Ex. A, p. 6.) Parker then appealed, and the California Court of Appeal reversed the trial court's decision on September 7, 2000. (*Id.* at Ex. A, pp. 1, 6, 18.) The Court of Appeal

remanded the case to the trial court, ordering the trial court to set aside its order and enter a new order directing the CDE to hold a new administrative appeals hearing before an impartial arbiter. (*Id.* at Ex. A, p. 18.)

**4.** The plaintiffs apparently refused to comply.

## II. Legal Standards for Dismissal

### A. *Dismissal for Failure to State a Claim*

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Newman v. Universal Pictures,* 813 F.2d 1519, 1521–22 (9th Cir. 1987). The court must view all allegations in the complaint in the light most favorable to the non-movant and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *See North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983).

### B. *Dismissal for Lack of Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction, and must dismiss claims over which they have no subject matter jurisdiction. Federal courts have jurisdiction over claims "arising under" federal law. U.S. Const., Art. III, § 2. If a plaintiff asserts one claim arising under federal law, a federal court may assert supplemental jurisdiction over, and thereby adjudicate, state law claims that are transactionally related to the federal claim. 28 U.S.C. § 1367(a).

## III. Discussion

### A. *Did the Searches of Golden Day's Offices and the Seizures of Golden Day's Files Violate the Fourth Amendment?*

The plaintiffs claim that the warrantless searches of Golden Day's offices and the warrantless seizures of Golden Day's files violated the Fourth Amendment. In response, the defendants argue that no warrant was required for the searches and seizures at issue, and therefore the Court must dismiss the plaintiffs' Fourth Amendment claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### 1. *The Fourth Amendment*

 The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Under the Supreme Court's interpretation of the Fourth Amendment, an individual is protected against unjustified government intrusion only where he has a "reasonable expectation of privacy". *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). People's reasonable expectations of privacy are not limited to their homes; thus, the Fourth Amendment prohibits unreasonable searches of both private residences and commercial facilities. *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Further, a business owner has a reasonable expectation of privacy in his commercial property not only with respect to criminal investigations conducted by police, but also with respect to administrative inspections designed to enforce regulatory statutes. *Id.* at 699–700, 107 S.Ct. 2636.

### 2. *Reasonableness of the Searches*

As noted above, the Fourth Amendment prohibits unreasonable searches and seizures. The Supreme Court has held that warrantless searches are presumptively unreasonable. *See e.g., Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Supreme Court, however, has established several exceptions to the warrant requirement. Generally, the Supreme Court deems exceptions to the warrant to be constitutionally proper where an important government interest greatly outweighs an individual's privacy interest.

*See, e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to arrest exception to the warrant requirement); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigency exception to the warrant requirement).

The defendants in this case argue that the pervasively regulated business exception to the warrant requirement excused their need to obtain a warrant. The Supreme Court has held that the expectation of privacy is reduced for businesses in closely regulated · industries. *Burger,* 482 U.S. at 700, 107 S.Ct. 2636. Thus:

> in [ ] situations of "special need," where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.
>
> This warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made.
>
> Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." . . .
>
> Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but

be aware that his property will be subject to periodic inspections undertaken for specific purposes." In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place, and scope."

*Id.* at 702–03, 107 S.Ct. 2636 (citations omitted).

The Ninth Circuit has held that "properly limited warrantless *inspections* of family day care homes fall within the 'pervasively regulated business' exception to the warrant requirement and thus do not violate the Fourth Amendment." *Rush v. Obledo,* 756 F.2d 713, 714 (9th Cir.1985) (citation omitted). In *Rush,* the operator of a day care home sought an injunction barring the execution of the warrantless inspections authorized by the California Health and Safety Code. *Id.* at 714–16. Section 1596.852 of the California Health and Safety Code provides:

> Any duly authorized officer, employee, or agent of the department may, upon presentation of proper identification, enter and inspect any place providing personal care, supervision, and services at any time, with or without advance notice, to secure compliance with, or to prevent a violation of, this act or the regulations adopted by the department pursuant to the act.

Cal. Health & Safety Code § 1596.852. Summarizing relevant case law, the *Rush* court stated "a statute authorizing warrantless searches which applies only to a single pervasively regulated industry, where urgent governmental interests are furthered by such regulatory inspections, does not violate the Fourth Amendment." *Rush,* 756 F.2d at 719 (citing *Donovan v. Dewey,* 452 U.S. 594, 600, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981)). Applying the three-step analysis set forth in *Burger,* the *Rush* court first held that a substantial government interest supported the regulatory scheme authorizing the inspections. The court stated:

The majority of children receiving care in family day care homes are under five years of age .... The California Legislature was plainly aware that such children, away from their parents, need the special protection of the state and that the interests, health, and safety of children are of paramount importance in our society. Parents who use day care, especially low-income parents who must place their children in affordable day care while they work, must be assured that strict monitoring of health and safety conditions will keep their children safe.

*Id.* at 720.

Second, the *Rush* court held that the warrantless inspections were necessary to further the regulatory scheme.

Recognizing the magnitude of abuses in child day care facilities susceptible to easy concealment, such as over-capacity, lack of supervision, accessibility to poisonous chemicals or firearms, open pools, hazardous stairwells, and sexual or physical abuse, the Legislature could reasonably determine that a system of warrantless inspection is necessary in this case.... Recognizing the states' vital interest in protecting children in family day care homes, we ... "defer to this legislative determination" of the necessity of unannounced inspection, since a warrant requirement could impede the " 'specific enforcement needs' " of the

statutes and regulations governing family day care.

*Id.* (internal citations omitted).

Finally, the *Rush* court held that the regulation of family day care homes was pervasive, giving the owner of a day care home sufficient awareness of the possibility of inspection to provide a constitutionally adequate substitute for a warrant.[5]

The defendants argue that they did not violate the Fourth Amendment by failing to obtain a warrant prior to searching Golden Day's offices because Golden Day is a day care facility that, like the day care home in *Rush*, falls within the pervasively regulated business exception to the warrant requirement. In response, the plaintiffs point out that *Rush* addressed only administrative searches of family day care *homes*, situated in the provider's home, and did not discuss commercial day care centers like Golden Day. *Id.* at 716. Thus, the plaintiffs argue that commercial day care centers are not exempt from the warrant requirement under this doctrine.[6]

■ Although the California Child Day Care Act identifies day care centers and day care homes as two distinct types of facilities,[7] the three-step analysis set forth in *Burger* provides no logical basis for distinguishing between them. Therefore the pervasively regulated business exception to the warrant requirement applies to both types of day care facilities.

First, the important government interest underlying the monitoring for which

---

**5.** However, the court held that California Health and Safety Code Section 1956.852 was overbroad, "permitting general searches of any home providing care and supervision at any time of the day or night—and thus invalid unless sufficiently limited by the current regulations so as to preclude general searches." *Id.* at 721. The court's concerns were the government's ability under the regulations: (1) to search day care homes at times when the facilities were used only as residences, and not as day care centers; and (2) to search portions of a private residence not used for the owner's day care business. Thus, the court decided that Section 1596.852 is overbroad and therefore constitutionally invalid

only as to day care homes, and not commercial day care centers.

**6.** That the defendants entered and inspected files in Golden Day's office facilities, rather than its day care facility, is of no consequence. The applicable regulation provides that "[a]ll children's records shall be subject to reproduction by the Department upon demand during normal business hours." 22 Cal.Code Reg. § 101221(d). Thus, children's records are subject to inspection regardless of where the operator of a day care center elects to keep them.

**7.** *See* Cal. Health & Safety Code § 1596.750.

the regulations provide—protecting the health and safety of young children in day care—is identical for day care homes and centers. Second, day care homes and centers are subject to substantially similar regulations. *See* Cal. Health & Safety Code §§ 1596.70 *et seq.* All day care homes and centers are subject to inspection under Sections 1596.852 and 1596.853. Inspection of day care centers is as necessary as inspection of day care homes. Finally, the regulations provide the same notice of the potential of an inspection to day care homes and centers; thus the regulatory scheme is an adequate substitute for a warrant in either context.

Moreover, if warrantless searches of day care *homes* do not violate the Fourth Amendment, warrantless searches of similarly-used *commercial facilities* likewise do not violate the Fourth Amendment, as reasonable privacy expectations are greater in the home than in business facilities.

■ Here, Pirillo filed a complaint against Golden Day, triggering the defendants' right to "make an onsite inspection" of Golden Day under California Health and Safety Code Section 1596.853. Under this pervasive regulatory scheme, no judicial evaluation is required prior to executing such a search. Thus, the defendants did not need a warrant to *enter* Golden Day and to *inspect* its files during business hours.

■ However, that no warrant was required for the searches at issue does not necessarily render the searches reasonable under the Fourth Amendment. Even where an exception to the warrant requirement applies, the government must execute searches in a reasonable manner to comport with Fourth Amendment requirements. The Ninth Circuit has held:

"Claims that otherwise reasonable searches have been conducted in an unconstitutionally unreasonable manner must be judged under the facts and circumstances of each case." ... Whether a search is unreasonable because of its intolerable intensity must be

determined by the particular facts of each case.

*United States v. Becker,* 929 F.2d 442, 446 (9th Cir.1991) (quoting *United States v. Penn,* 647 F.2d 876, 882–83 (9th Cir.) (en banc), cert. denied, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980)); *see also Liston v. County of Riverside,* 120 F.3d 965, 979 (9th Cir.1997) ("[U]nnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment.").

Here, the first and fourth claims of the plaintiffs' First Amended Complaint allege Fourth Amendment violations based on the defendants' warrantless entrance and search of Golden Day's offices. They do not specifically allege that the defendants searched Golden Day's files in an unconstitutionally unreasonable manner.

The defendants were permitted to enter and search Golden Day facilities without a warrant pursuant to state regulations and the pervasively regulated business exception to the warrant requirement. Thus, the first and fourth claims of plaintiffs' First Amended Complaint fail to state a claim upon which relief may be granted, and are hereby dismissed under Federal Rule of Civil Procedure 12(b)(6).

However, in the First Amended Complaint, the plaintiffs allege that the defendants were assisted in their searches by LAPD officers who threatened to arrest, and used physical force against, one plaintiff. Further, the plaintiffs claim that the defendants "threw Golden Day's files into boxes without keeping any record of which files they were taking." (First Am. Compl., ¶ 36.) Although not specifically pleaded as a cause of action alleging that the searches, even if lawful, were not conducted in a reasonable manner, these facts would support such a claim.

Therefore, the Court grants the plaintiffs leave to amend to state a claim asserting that the defendants conducted the searches in an unconstitutionally unreasonable manner.

### 3. Reasonableness of the Seizures

*Rush* addressed only the warrantless *inspection* of a day care facility. Thus, resolution of the propriety of the defendants' warrantless *seizure* and *removal* of Golden Day's files requires additional analysis. The California Health and Safety Code provides that "[u]pon receipt of a complaint, ... the department shall make an onsite inspection ...." Cal. Health & Safety Code § 1596.853(c).[8]

The California Code of Regulations further explains the inspections permitted by the above section of the Health and Safety Code. "The Department has the authority to interview children or staff, and to inspect and audit child or child care center records, without prior consent." 22 C.C.R. § 101200(b). In addition, "[a]ll children's records shall be subject to reproduction by the Department upon demand during normal business hours." 22 C.C.R. § 101221(d). Thus, only entrance and inspection of the premises, and reproduction of records are contemplated by the regulatory scheme.

■ The plaintiffs argue that, although these regulations may permit the on-site warrantless inspection and reproduction of day care center records, they do not authorize the removal of files from the premises without a warrant. Therefore, the plaintiffs contend that by seizing files, the defendants exceeded the permissible scope of the administrative search. They contend that the defendants needed a court order to seize Golden Day's files; since they did not have prior court authorization, the plaintiffs contend that the defendants violated the Fourth Amendment.

The defendants offer a different interpretation of the applicable statutory sections. They argue that, since 22 C.C.R. § 101221(d) provides that records are "subject to reproduction", but is silent as to the permissible location or manner of reproduction, the defendants acted permissibly in removing the files to facilitate their reproduction. The defendants assert that their removal of the files from Golden Day was reasonable given the refusal of Golden Day personnel to cooperate, which made on-site reproduction impracticable.

■ For the pervasively regulated business exception to the warrant requirement to apply not only to searches but also to seizures, the statutory regulation must expressly authorize seizures. *See United States v. Argent Chem. Labs.*, 93 F.3d 572, 574, 577 (9th Cir.1996) (statute regulating drug manufacturers that expressly and specifically rendered articles "liable to seizure" eliminated the need for probable cause or a warrant to seize, because Congress expressly authorized such seizures through the regulation).

Further, given the policies underlying the pervasively regulated business exception to the warrant requirement, it is reasonable to infer that the Legislature did not, through its silence, intend to expand the powers of state agents to seize day care facility records without a warrant. As discussed above, one of the three criteria for applying the pervasively regulated business exception to the warrant requirement is that the regulatory scheme must provide a "constitutionally adequate substitute for a warrant." *Donovan v. Dewey*, 452 U.S. 594, 603, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). Thus, the regulatory scheme must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As discussed in *Rush*, the regulations at issue provide adequate notice of the place and things to be searched or inspected. However, the regulations offer no advance notice of a seizure of student files.

8. The provision directly at issue in *Rush* permits inspections "to secure compliance with, or to prevent a violation of, this act or the regulations adopted by the department pursuant to the act." *Id.* at § 1596.852. In this case, it seems the defendants sought access to Golden Day's files to procure student contact information to facilitate the relocation of students following Golden Day's loss of state funding. Thus, Section 1596.853 provides the only possible justification for the searches at issue here.

Thus, the defendants cannot justify the warrantless seizure of Golden Day's files.

As a result, claims two and five, which allege Fourth Amendment violations based on the defendants' seizure and removal of Golden Day's files, do state claims upon which relief may be granted.

**B.** *Are the Defendants Entitled to Qualified Immunity?*

■ The plaintiffs have sued the state-employed defendants in their individual capacities. Government employees performing discretionary functions generally enjoy qualified immunity; this immunity shields government officials from liability for civil damages, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotations and citation omitted); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In other words, "[a] government official is not entitled to qualified immunity if the contours of the right allegedly violated are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hershey v. California State Humane Soc'y,* 1995 WL 492626 at *4 (N.D.Cal. 1995) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Courts evaluate whether an official's conduct was objectively reasonable under a two-part test: "1) Was the law governing the official's conduct clearly established? [and] 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

■ The defendants argue that they are entitled to qualified immunity because they acted pursuant to a reasonable interpretation of valid California statutes when they removed Golden Day's files to reproduce them. The defendants correctly observe that no judicial opinion has interpreted whether an "inspection" under these regulations allows the seizure and off-site reproduction of files. They assert that because no authority dictates how the records are to be reproduced, the law is not clearly established. Further, because Golden Day refused to cooperate in the inspection, the defendants acted reasonably in taking the files to the DSS office to reproduce them, and returning them six hours later. (Def.'s Mot., pp. 8–10.)

The plaintiffs contend, however, that the Court must look not to specific interpretations of the California regulations which authorize the searches, but instead to the Fourth and Fourteenth Amendments to the Constitution as the relevant law governing the defendants' conduct. (Pl.'s Opp., p. 10.) The Fourth Amendment requires that all searches and seizures be reasonable. U.S. Const. amend. IV. Thus, the plaintiffs essentially argue that the defendants are not entitled to qualified immunity because applicable tenets of Fourth Amendment jurisprudence are clearly established, and no reasonable state agent would believe that the defendants' actions in this case were reasonable under the Fourth Amendment.

The Court holds that the qualified immunity doctrine does not bar the plaintiffs' claims. First, using the Fourth Amendment as the applicable law, no reasonable DSS agent would believe that the loss and destruction of day care center records alleged by the plaintiffs are authorized by the Fourth Amendment's requirement for reasonable searches and seizures. Further, no reasonable agent would believe that the Fourth Amendment permits the DSS to return inspected records to a day care center in a disorganized manner.

The defendants are not entitled to qualified immunity applying the statute as the relevant law, even considering that its contours have not previously been clearly defined. The regulations that grant DSS agents the authority to *enter* day care centers and *inspect* and *reproduce* their records cannot reasonably be read to permit something as radical as a seizure of student files. Reproduction is vastly dif-

ferent from a seizure, which occurs where there is a meaningful interference with possessory rights. The California Legislature could have authorized "seizures" of day care center records, but instead elected to authorize only entrance, inspection, and reproduction. No reasonable person under the circumstances could believe that wholesale, indiscriminate removal of records is authorized by a statute allowing inspection and reproduction. This is particularly true in light of the ready availability of on-site reproduction services.

Thus, the doctrine of qualified immunity does not bar the plaintiffs' claims.

### C. Do the Plaintiffs State Valid Conspiracy Claims?

The defendants argue first that the plaintiffs' conspiracy claims should be barred because no underlying civil rights violation survives their motion to dismiss. However, as discussed above, the plaintiffs have asserted claims for civil rights violations based on their Fourth Amendment right to be free from unreasonable seizures.

Next, the defendants argue that the plaintiffs' conspiracy allegations are vague and conclusory, lacking the required level of specificity to defeat a motion to dismiss. As discussed above, the court must view all allegations in the complaint in the light most favorable to the plaintiffs and must accept all material allegations—as well as any reasonable inferences to be drawn from them—as true. *See North Star,* 720 F.2d at 581.

In the First Amended Complaint, the plaintiffs allege that defendant Pirillo, a CDE employee, "decided to take the law into her own hands," and that when defendants Woods and Hua arrived at Golden Day, they told Parker that "DSS had received a complaint about Golden Day from CDE." (First Am. Compl., ¶¶ 32–33.) Further, the plaintiffs allege that Ramirez reiterated Woods's arguments by telephone, and that Neeson told Parker that DSS had already removed files from one Golden Day office. (*Id.* at ¶¶ 34, 38.) The plain-

tiffs argue that these allegations allow the reasonable inference that the defendants joined together in concerted action and shared a common intent. These allegations are sufficiently specific under the permissive motion to dismiss standard to support a claim for conspiracy.

### D. Does Plaintiff Little's Failure to Allege Compliance with California Tort Claims Act Bar her Claims?

California Government Code Section 911.2 conditions an individual's right to sue a public entity, for injury resulting from an act or omission in the scope of his employment, on the timely filing of claims and actions. Section 911.2 reads, in pertinent part:

A claim relating to a cause of action for ... injury to person ... shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action....

Cal. Gov't.Code § 911.2.

California law places the same limitation on actions against public employees. California Government Code Section 950.2 states:

... a cause of action against a public employee ... for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under [Section 911.2] ....

Cal. Gov't.Code § 950.2.

The Ninth Circuit has held that Section 911.2 does not create mere procedural requirements, but instead provides elements of and conditions precedent to a plaintiff's state claims. *Willis v. Reddin,* 418 F.2d 702, 704 (9th Cir.1969). As a result, the defendants argue that Little's failure to allege compliance with the California Tort Claims Act constitutes grounds for dismissal of her assault and battery claims against the defendants, all of whom are state employees.

Little responds by contending that Section 911.2 does not apply to the facts of the instant case. She argues, first, that Section 911.2 does not limit claims asserted against government employees sued in their individual capacities, and second, that the acts alleged in the complaint clearly fall outside the ordinary scope of the defendants' employment.

It is unclear whether, as Little argues, a plaintiff may plead around the California Tort Claims Act by asserting a claim against a public official in his individual capacity, although at least one district court has held that Section 911.2 does bar such claims. *See Gilmore v. State of Cal.,* 1995 WL 492625, *1–2 (N.D.Cal.1995). However, no on-point, mandatory authority on this question exists.

Even if the California Tort Claims Act does apply to claims against public officials sued in their individual capacities, Little's claims are not necessarily barred. Little's second argument is that she need not allege compliance with the Tort Claims Act because the defendants acted outside the scope of their authority when they struck her on the head.

Section 911.2 applies only to claims arising from "an act or omission in the scope of [a defendant's] employment as a public employee". Cal. Gov't.Code § 950.2. California courts have explained that

> [f]or the purpose of the claim statute, a public employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform or when the act is an incident to his duty and was performed for the benefit of his employer and not to serve his own purposes or conveniences. The phrase "scope of employment" has been equated with the express or implied power of the public employee to act in a particular instance, and in evaluating his conduct to determine whether it is within the ambit of his authority we are to look not to the nature of the act itself, but to the purpose or result intended.

*Neal v. Gatlin,* 35 Cal.App.3d 871, 875, 111 Cal.Rptr. 117 (1973) (citations, internal quotation, and footnote omitted).

According to the allegations set forth in the First Amended Complaint, the purpose of the defendants' alleged assault and battery of Little was to facilitate the seizure of Golden Day's files. As discussed above, the allegations are sufficient to support the plaintiffs' claim that the seizures of Golden Day's files were unconstitutional. Unconstitutional acts are not within a government agent's express or implied powers because the government has no power to confer on its agent the authority to act unconstitutionally. *See, e.g., Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690–92, 696–97, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (discussing the non-applicability of the sovereign immunity doctrine where a government agent acts unconstitutionally and therefore beyond the scope of his authority); *Church of Scientology Int'l v. Kolts,* 846 F.Supp. 873, 879 (C.D.Cal.1994) (also discussing the non-applicability of the sovereign immunity doctrine where a government agent acts unconstitutionally).

As Little asserts, the alleged assault and battery fell outside the ordinary scope of the defendants' employment because the defendants "are not vested with the authority to conduct unjustified, warrantless . . . seizures" of a day care center's files. (Pl.'s Opp., p. 14.) Therefore, if, as the plaintiffs claim, the defendants' seizures of Golden Day's files were unconstitutional, Little's claims arising from the manner of executing these ultra vires acts are not barred by the California Tort Claims Act.

E. *Does the Court have Subject Matter Jurisdiction over Plaintiff Little's Assault and Battery Claims?*

 The defendants argue that, because Little has not asserted any federal claims against the defendants, this Court has no supplemental subject matter jurisdiction over Little's state claims. The plaintiffs respond that this Court may ex-

ercise supplemental jurisdiction over Little's state court claims because they are so closely related to Parker and Golden Day's federal claims that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction under Section 1367(a) includes claims that involve the joinder of additional parties. *Id.*

The plaintiffs point out that Little is a Golden Day employee, was present during the seizure of Golden Day's files, and was allegedly assaulted and battered by the defendants during the search and seizure. Little likely will be deposed in this matter and will be a trial witness for plaintiffs Parker and Golden Day. The plaintiffs urge that, in addition to the relatedness of the claims, the cost to the parties of pursuing a separate state court action weighs in favor of an exercise of supplemental jurisdiction.

The Court agrees that it has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Little's claims.

### IV. Plaintiffs' Request for Judicial Notice

A court may take judicial notice of a fact which is not subject to reasonable dispute and which is capable of an accurate and ready determination. Fed.R.Evid. 201(b). If a party requests that a court take judicial notice and supplies the court with the necessary information, the court must take judicial notice. *Id.*

The plaintiffs request that this Court take judicial notice of an opinion issued by the California Court of Appeal, Second Appellate District, filed September 7, 2000, and certified for publication, in the case of *Golden Day Schools v. Department of Educ.*, Case No. B136421. That opinion granted Golden Day a new hearing "before an impartial arbiter" regarding the decision by the California Department of Education to deny Golden Day future government funding and to debar Golden Day from applying for further government contracts for three years. (Pl.'s Req. Jud.

Not., Ex. A at p. 18.) The content of the California Court of Appeal opinion is not subject to reasonable dispute and is capable of accurate and ready determination. Therefore, the Court hereby grants the plaintiffs' request for judicial notice of the opinion referenced above.

### V. Conclusion

The Court hereby dismisses claims one and four of the plaintiffs' First Amended Complaint for failure to state a claim under Rule 12(b)(6), and grants the plaintiffs leave to amend their complaint. The Court denies the defendants' motion to dismiss as to all other claims and on all other grounds.

Further, the Court takes judicial notice of the decision issued by the California Court of Appeal on September 7, 2000. IT IS SO ORDERED.